IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Scottsdale Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:12-cv-678-RMG |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Simco, Inc. of Charleston, David A. Simmons, | ) | |
| Elizabeth C. Simmons, Simmons Realty, and | ) | |
| Kelly Marie Vest Skelly, Trustee of The Kelly | ) | |
| Marie Vest Skelly Revocable Trust Dated | ) | |
| June 18, 2004, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Simco, Inc. of Charleston and | ) | |
| David A. Simmons, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Association Insurance Company, Inc. | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

This matter comes before the Court on Third-Party Plaintiffs' Simco, Inc. of Charleston ("Simco") and David A. Simmons' ("Simmons") motion for partial summary judgment as to Association Insurance Company ("AIC")'s duty to defend Simco in a pending state court suit. (Dkt. No. 13). Captioned as *Kelly Skelly et al v. Simco, Inc. of Charleston, et al*, C/A No.: 09-CP-10-1947 (the "underlying lawsuit"), the underlying lawsuit alleges, *inter alia*, faulty workmanship, negligence and defects in a home constructed by Simco, a general contractor, David Simmons, and a number of other subcontractors at 9 Tradd Street, Charleston, South Carolina. (Dkt. No. 13-4). AIC, one of two insurance companies involved in this dispute, began

1

insuring Simco on January 16, 2008 via a commercial general liability insurance policy. The complaint in the action before this Court was filed by Scottsdale Insurance Company ("Scottsdale"), seeking a declaratory judgment as to the scope of coverage under commercial general liability policies that insured Simco during the periods January 27, 2004 to January 26, 2007. (Dkt. No. 1). Scottsdale has provided a defense in the underlying lawsuit to Simco, but under a reservation of rights and has refused to indemnify Simco. (Dkt. No. 10 at 6). In answering the complaint, Simco and David Simmons brought a third-party complaint against third-party defendant AIC, alleging that pursuant to various policies from the period January 16, 2008, through January 16, 2013, AIC has the duty to defend and indemnify Simco in the underlying lawsuit. (Dkt. No. 10 at 8). AIC has filed a response to Simco and David Simmons' motion for partial summary judgment and Simco and Simmons have filed a reply. (Dkt. Nos. 31, 34). For the reasons discussed herein, the Court grants Plaintiffs[1] Simco and Simmons' motion for partial summary judgment as to the limited issue of whether AIC has a duty to defend Simco in the underlying lawsuit.

**Legal Standards**

In a motion for summary judgment, the movant is entitled to relief only if he or she can show "that there is no genuine dispute as to any material fact" and the moving party is thus "entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact" is "genuine" if the evidence offered is of the type from which a reasonable jury might return a

---

[1] For the purposes of simplicity in this Order, third-party plaintiffs Simco and David Simmons are referred to as "Plaintiffs" and third-party defendant AIC is referred to as "Defendant."

2

verdict for the non-moving party. *Id.* at 257. The evidence must be viewed in a light most favorable to the non-moving party, and all inferences and ambiguities are read in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

An insurer's duty to defend is determined by the allegations in the complaint. *City of Hartsville v. South Carolina Mun. Ins. & Risk Financing Fund*, 382 S.C. 535, 543 (S.C. 2009). The insurer "must defend any suit alleging bodily injury or property damage seeking damages payable under the terms of the policy." *B.L.G. Enterprises v. First Financial Ins. Co.*, 334 S.C. 529, 535 (S.C. 1999). The "duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured." *City of Hartsville*, 382 S.C. at 544. The duty to defend is broader than the duty to indemnify – "[i]f the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *Id.* at 543. The South Carolina Supreme Court has noted that "the duty to defend may also be determined by facts outside the complaint that are known by the insurer." *USAA Property and Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 657 (S.C. 2008).

In reading insurance policies, courts are to employ "the general rules of contract construction" and give the language its "plain, ordinary and popular meaning." *Clegg*, 377 S.C. at 655. Applying the principles of contract law, when an insurance policy "is unambiguous, clear and explicit, it must be construed according to the terms the parties have used." *Id.* Ambiguities in terms contained within insurance policies are "construed liberally in favor of the insured and strictly against the insurer." *Id.* When a complaint raises a claim that is covered by an insurance policy, "the inclusion of some non-covered claims does not abrogate an insurer's duty to defend." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15 (S.C. App. 1994).

3

**Factual Background**

This declaratory judgment action arises out of allegations in an underlying lawsuit brought in South Carolina state court by Kelly and Martin Skelly, the purchasers of a home located at 9 Tradd Street, against various parties involved in the sale and construction of the home. (Dkt. No. 13-4). In their Third Amended Complaint (hereafter the "Complaint"), the Skellys allege that the home was constructed by Simco and David Simmons, the holder of the general contractor license on behalf of Simco, and that a building permit was obtained around May 15, 2003. *Id.* at 8. The Skellys further allege that a certificate of occupancy was obtained for the home by David Simmons on March 29, 2005. *Id.* at 9. The Complaint alleges that David Simmons and his wife, Elizabeth Simmons, occupied the home until it was purchased by the Skellys. *Id.* A contract of sale was entered into on May 16, 2007 and the closing occurred on June 16, 2008. *Id.* at 11.

The Complaint alleges that the Skellys "discovered significant quantities of water entering the home, specifically in the basement area" on August 21, 2008. *Id.* at 11. The allegations further state that "the home was defectively constructed such that from the time of the completion of the construction the home has been exposed to harmful moisture and deleterious conditions that have led to property damage." *Id.* at 17. The Skellys allege that the property damage has occurred "throughout the structure" and has worsened since completion of construction. *Id.* at 20. As a result, the Skellys have had to hire experts to investigate their home and remove a wine cellar, storage cabinets and ornate shelving. *Id.* at 12-13. The Skellys allege that they have suffered actual, special, incidental, and consequential damages as a result of Simco and Simmons' actions. *Id.* at 19, 20, 21, 27.

There are two types of commercial general liability policies by which AIC insured

Simco, beginning January 16, 2008, with coverage through January 16, 2013.[2] Both policies provide coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that "[w]e will have the right and duty to defend the insured against 'suit' seeking those damages." (Dkt. Nos. 30-1 at 24; 30-2 at 29). The policies state that "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.*

Both types of policies contain an exclusion for coverage referred to as the "Prior Completed Operations" ("PCO") exclusion. The policy effective during the first year of coverage states, in part, as follows:

> This insurance does not apply to "property damage" arising out of "your work" if "your work" was completed prior to the first date of coverage with [AIC] that began with or has continued without interruption through the present policy period. This exclusion does not apply to "property damage" to personal property that is not part of "your work."

(Dkt. No. 30-1 at 18). In the subsequent policies effective starting January 16, 2009, the first sentence in the PCO exclusion differs slightly and reads that "this insurance does not apply to 'property damage' arising out of 'your work' if 'your work' was completed *or abandoned* prior to the first date of coverage, *or renewal thereof without lapse* with [AIC]." (*See, e.g.*, Dkt. No. 30-2 at 73).

The policy in place during the first year has an exclusion that covers property damage to personal property of others up to $10,000, inclusive of any costs of defense. (Dkt. No. 30-1 at 16). This exclusion also states "[t]his coverage does not create or imply

---

[2] The initial policy issued by AIC to Simco was effective January 16, 2008 until January 16, 2009. (Dkt. No. 30-1 at 4). The subsequent policies, which contained some revised language as discussed herein, became effective January 16, 2009 through January 16, 2013. (Dkt. Nos. 30-

5

a duty to defend." *Id.* In the second and subsequent years, the policies exclude coverage for property damage to "premises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises." (Dkt. No. 30-2 at 32). However, the policy excepts from this exclusion "premises" that "are 'your work' and were never occupied, rented or held for rental by you." *Id.* at 33.

The policies list the "Insured" as "Simco Inc of Charleston." (Dkt. Nos. 30-1 at 7; 30-2 at 14; 30-3 at 12; 30-4 at 13; 30-5 at 12). All policies state that with respect to "[a]n organization other than a partnership, joint venture or limited liability company" an executive officer or director is an insured but "only with respect to. . .duties as. . .officers or directors." (Dkt. Nos. 30-1 at 31; 30-2 at 37).

## Discussion

Defendant AIC argues that the PCO exclusion, which requires that claimed property damage be both damage to "personal property" and to property that is not part of "your work", excludes the allegations against Simco and David Simmons in the Complaint. AIC argues that the specific references to damage to "built-in wood cabinetry, a wine cellar and ornate shelving" concern damages to fixtures and not personal property. (Dkt. No. 31 at 11). Moreover, AIC argues that even if these items were considered personal property, which is not defined in the insurance contract, it is clear that these items were already present in the home when the Skellys purchased it and thus they are part of Simco's work. *Id.* at 12.

The South Carolina Supreme Court has stated that an insurer has a duty to defend an insured "[i]f the underlying complaint creates a possibility of coverage." *City of Hartsville*, 382 S.C. at 543. The Complaint in the underlying lawsuit alleges property damage "throughout the

---

2, 30-3, 30-4 and 30-5).

structure" and that "significant quantities of water" have entered the home. (Dkt. No. 13-4 at 11, 17, 20). The Complaint also alleges that as a result, the Skellys suffered actual, special, incidental and consequential damages. *Id.* at 19, 20, 21, 27. The Court finds that the allegations in the Complaint are sufficient, when construed liberally in favor of the insured, to create a possibility of coverage, invoking Defendant AIC's duty to defend.

Moreover, South Carolina law compels the Court to construe ambiguous terms in the insurance policy liberally in favor of the insured and strictly against the insurer. *Clegg*, 377 S.C. at 655. Personal property is not defined in the insurance policies nor do the insurance policies specifically exclude items that could arguably be fixtures. In reading the Complaint, the Court cannot conclude whether the damaged items referenced – a wine cellar, storage cabinets, and ornate shelving – constitute personal property or fixtures. (Dkt. No. 13-4 at 12-13). The Court is also not in a position, based on a liberal reading of the Complaint, to determine whether these items should be considered AIC's work or were installed by the Skellys. Moreover, the Complaint alleges property damage throughout the structure and consequential damages resulting therefrom, which the Court finds in itself sufficiently creates a "possibility of coverage", regardless of whether the items specifically mentioned in the Complaint are determined to be fixtures or personal property. Viewing the evidence in a light most favorable to the Defendant, given that all inferences in reading the Complaint are to favor the insured, the Court finds that there is no genuine issue of material fact as to whether AIC owes the Plaintiffs a duty to defend the Complaint in the underlying lawsuit.

Defendant AIC further argues that the policy in place during the second and subsequent years excludes coverage for property damage to "premises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises." (Dkt. No. 31 at 13). This exclusion

excepts "premises" that "are 'your work' and were never occupied, rented or held for rental by you." The named insured in all of the policies at issue is Simco. All policies expressly state that the insured includes executive officers but only with respect to the officer's duties. (Dkt. Nos. 30-1 at 31; 30-2 at 37). David Simmons, an officer of Simco, owned and occupied the house prior to the sale to the Skellys. (Dkt. No. 34-4 at 2). There is no evidence is the record, however, that David Simmons owned and sold the property in his capacity as an officer of Simco. The Court therefore finds that it is unclear whether this exclusion applies. Construing the policy in favor of the insured, there is a possibility of coverage invoking AIC's duty to defend.

Finally, Defendant AIC argues that the policy effective during the first year of coverage covers property damage to personal property of others up to $10,000, but "[t]his exclusion does not create or imply a duty to defend." (Dkt. No. 31 at 13). Based on this provision, AIC argues that it owes no duty to defend Simco and David Simmons for allegations regarding damage to the Tradd Street home. *Id.* The Court finds that it need not pass upon the meaning or scope of this particular provision because it was only in place during one out of the five years of coverage by AIC and only appears to cover some aspects of the claims against Simmons and Simco. "[T]he inclusion of some non-covered claims does not abrogate an insurer's duty to defend when a complaint raises claims covered by the policy." *Isle of Palms Pest Control Co.*, 319 S.C. at 15. Therefore, because there is a possibility of coverage as to some claims in the Complaint, AIC's duty to defend is invoked.

## Conclusion

The Court concludes that partial summary judgment should be granted in favor of Simco and David Simmons on the narrow issue of whether there is a duty to defend the Complaint.

Viewing the evidence in a light most favorable to the Defendant AIC, there is no genuine issue of material fact as to whether there is a possibility of coverage. The Court's Order should not be construed to pass upon the merits of whether there is coverage under any of AIC's policies such that indemnification is required, but intends to address only the issue of AIC's duty to defend the Complaint. Accordingly, the Court hereby **GRANTS** Simco and David Simmons's Motion for Partial Summary Judgment (Dkt. No. 13).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

June 5, 2012
Charleston, South Carolina